*1178 OPINION
By the Court,
Hardesty, J.:
A jury convicted appellant James Valdez of first-degree murder with the use of a deadly weapon and attempted murder with the use of a deadly weapon. Contrary to constitutional and statutory procedures requiring a separate penalty trial, when the jury returned the guilty verdict, it also announced that it had decided the sentence. Valdez subsequently agreed to waive his right to a penalty hearing. He stipulated to a sentence of life without the possibility of parole for first-degree murder and an equal and consecutive term for the use of a deadly weapon. In this stipulation, he reserved his right to appeal the judgment of conviction. The district court then sentenced him to life in prison without the possibility of parole for first-degree murder, plus an equal and consecutive term for the use of a deadly weapon, and 96 to 240 months for attempted murder, plus an equal and consecutive term for the use of a deadly weapon, to run consecutively with the first-degree murder sentence. In this appeal from the judgment of conviction, we address four issues raised by Valdez.[1]
First, we consider whether the district court must explicitly instruct the jury, immediately prior to deliberations in a first-degree murder case, that it is to determine only the question of guilt and not deliberate on the sentence until the separate penalty phase of the proceedings. Here, the district court only instructed the jury regarding bifurcation orally, immediately after jury selection. We conclude that the district court erred by failing to instruct the jury in writing, after the close of argument, that it was not to de *1179 liberate as to Valdez’s possible penalty until after the sentencing hearing.
Second, we consider whether the jury acted improperly by deliberating the penalty while deciding the issue of guilt and, if so, whether the district court abused its discretion in denying a motion for a mistrial based on this jury misconduct. We hold that the jury disobeyed the district court’s oral instruction and therefore committed misconduct. We further conclude that this misconduct deprived Valdez of his constitutional rights, and the district court, therefore, abused its discretion in denying a mistrial based on this misconduct.
Third, we consider whether numerous alleged acts of prosecutorial misconduct require reversal. In doing so, we clarify the proper harmless-error analyses for prosecutorial misconduct of a constitutional and nonconstitutional dimension. We conclude that the prosecutors engaged in several instances of misconduct throughout the trial but that the individual instances of prosecutorial misconduct do not require reversal.
Finally, we consider whether cumulative error warrants reversal in this case. Although the evidence of guilt was substantial, it was not overwhelming. Considering the jury instruction error, the juror misconduct, and the prosecutorial misconduct, we conclude that these errors denied Valdez a fair trial. Therefore, we reverse and remand.

FACTS

Valdez shared an apartment with his girlfriend, Teresa Tilden, and her 12-year-old son, S.E. Early on November 8, 2004, Tilden and Valdez became involved in a heated argument. Both of them had been drinking. Tilden awoke S.E. to help calm Valdez, who said that he was leaving the apartment. The couple argued, and S.E. tried to calm Valdez down. Tilden told S.E. to get a knife, but S.E. testified that he refused to do so.
At some point, Valdez left the apartment and walked down to the parking lot. He then went back up the steps to the apartment, knocked on the door, and when no one opened the door, he went back down to the parking lot. He then walked up the steps to the apartment a second time. Witnesses testified that Valdez was calm — singing or humming — as he walked up the steps to the apartment. However, S.E. testified that when Valdez reentered the apartment, he was angry and began to carry some of his belongings to the door. Tilden interfered by putting his things back where they had been. Valdez grabbed a knife from the kitchen and told Tilden to leave him alone while he gathered his belongings or else he would kill her. Tilden replied that she was not afraid of him, she *1180 continued to interfere, and then she pushed him multiple times. After Tilden turned her back to walk away, Valdez grabbed her from behind.
Valdez told a friend that when he grabbed Tilden from behind, S.E. threatened him with a knife, told him to let Tilden go, and then stabbed Valdez in the hand. While Valdez suffered a cut to his hand, a police detective testified at trial that Valdez could have accidentally cut himself because, with the amount of blood involved in a killing with multiple stabbings, conditions become slippery and the perpetrator sometimes misses, stabbing himself. S.E. testified that he never had a knife, and there was no evidence that Tilden had a knife during the altercation.
When Valdez grabbed Tilden from behind, he sliced her chin, consistent with an attempt to slash her throat. He then stabbed S.E. in the chest with an 8.5-inch blade, which broke and remained lodged in S.E.’s body. Valdez dragged S.E. into the kitchen, retrieved another knife, and continued to stab him. According to the transport nurse’s testimony, in addition to the wound to his chest, S.E. suffered three puncture wounds on his right shoulder, a wound to his right neck area, and a wound to his ear.
While Valdez was stabbing S.E. in the kitchen, Tilden was screaming from the living room. In response, Valdez left S.E. lying on the kitchen floor to move toward Tilden. Later, when the police found Tilden, she was lying face-down, covered in blood, and already dead. According to the coroner’s testimony, she suffered multiple blunt force injuries and a total of nine stab wounds.
When Valdez attacked Tilden, S.E., with the broken knife still lodged in his body, grabbed his shoes and fled the apartment. On his way to the main office, S.E. collapsed to the ground. Valdez, holding a knife, ran down the apartment stairs after him. Witnesses gave conflicting testimony regarding whether Valdez stabbed and punched S.E. while he was on the ground. Witnesses, however, agreed that Valdez ran after a security guard who attempted to aid S.E. Valdez did not reach the security guard but turned in a different direction.
After leaving the apartment complex, Valdez called a friend and told him that he had “screwed up” and “cut” Tilden and S.E. Valdez also said that he attempted to kill himself with the knife, but it was too dull. Later, the police found a knife and blood trail by a dumpster near the location where Valdez had called his friend.
At the crime scene, the police discovered Valdez’s cellular phone number and called him. While Valdez was talking to one police officer, another officer approached him and arrested him outside the hospital.
The grand jury indicted Valdez on the following three counts: (1) first-degree murder with the use of a deadly weapon for the death of Tilden, (2) attempted murder with the use of a deadly *1181 weapon for the stabbing of S.E., and (3) assault with a deadly weapon for running after the security guard. The State noticed its intent to seek the death penalty. After a four-day trial, the jury began deliberations.

Verdict and sentencing

The district court gave no written jury instruction regarding the separation of the guilt and penalty phases immediately before the jury entered deliberations and the jury had no instructions describing the various sentences that could be imposed if the jury found Valdez guilty.
During jury selection, however, the district court and the prosecutor orally explained the general procedure for the bifurcated proceedings. Nevertheless, during deliberations the jury submitted a note to the judge inquiring whether the second phase would proceed that night if the jury convicted Valdez of first-degree murder. The judge responded in writing, “NO! IT WILL NOT GO TONIGHT[.]”
The jury then delivered its verdict: guilty as to one count of first-degree murder with the use of a deadly weapon, guilty as to one count of attempted murder with the use of a deadly weapon, and not guilty as to one count of assault with the use of a deadly weapon. When the district court informed the jury that it would return a different day for the penalty phase, the jury foreperson interrupted, explaining that a portion of the jury’s deliberations had been devoted to the penalty, and it had already decided Valdez’s sentence. The district court concluded that two separate phases were necessary and the defense needed the opportunity to present mitigating evidence. Therefore, the district court required the jury to return for the penalty phase.[2]
At the penalty hearing, the parties informed the district court that they had reached an agreement as to the sentence. Valdez accepted two consecutive life sentences without the possibility of parole, one for the murder of Tilden and one for the use of a deadly weapon. Valdez also reserved the right to appeal any issue in the case, including the procedure regarding the jury’s sentence deliberations. The State reserved the right to seek all possible sentences, including the death penalty, if this court reversed the verdict. Valdez then waived his right to a penalty hearing by the jury.
Subsequently, the defense moved for a mistrial based on the assertion that the jury violated its oath by considering the penalty during the guilt phase. The district court heard arguments from both sides, denied the motion for a mistrial, and sentenced Valdez to life in prison without the possibility of parole for first-degree murder, plus an equal and consecutive sentence for the use of a *1182 deadly weapon. As to the attempted murder with the use of a deadly weapon charge, the district court sentenced Valdez to 96 to 240 months, plus an equal and consecutive term for the use of a deadly weapon, to run consecutively with count one. Valdez now appeals from the judgment of conviction.

DISCUSSION

On appeal, we discuss four of Valdez’s challenges. First, Valdez argues that the district court erred by failing to instruct the jury in writing that it was not to consider sentencing during its deliberation at the conclusion of the guilt phase of the trial. Second, he argues that the jury committed misconduct, depriving him of his federal and state constitutional rights of due process, a fair trial, and a reliable sentence, when it deliberated on his sentence during the guilt phase, and therefore the district court abused its discretion in denying a mistrial based on this misconduct. Third, Valdez alleges that numerous acts of prosecutorial misconduct throughout the trial require reversal. Fourth, Valdez contends that cumulative error requires reversal. We address each of these arguments in turn.

Jury instruction regarding the separate guilt and penalty phases

Valdez argues that the district court committed reversible error by not explicitly instructing the jury, immediately prior to the guilt-phase deliberations, that it was to determine only the question of guilt. We agree.
NRS 175.552(1) requires that a district court hold a separate penalty hearing when a defendant is convicted of first-degree murder. In a first-degree murder case, an instruction “directing the jury not to involve the question of guilt with a consideration of the penalty is proper.”[3] In any trial, NRS 175.161(1) requires the district court to instruct the jury at the close of argument with written instructions. The same statute precludes the district court from giving oral instructions to the jury unless the parties mutually agree to the oral instruction. If there is no record of the parties’ affirmative mutual consent to an oral instruction, this court presumes objection to an oral jury instruction, even absent an actual objection.[4]
In this case, the district court and the prosecutor orally advised the jury during the jury selection process regarding the bifurcated *1183 trial proceedings. In particular, the district court explained the procedure for a first-degree murder trial, detailing the different phases to determine guilt and penalty:
The procedure is as follows: And there are two phases to a death penalty case. The trial phase and the penalty phase.
If after the trial phase the [jjury returns a verdict of guilty for first-degree murder, only first-degree murder, then we immediately proceed with that second phase, the penalty phase.
In the penalty phase, the State has the burden of proving beyond a reasonable doubt the alleged aggravators. And then they’11 — then you’ll be indicated what aggravators that the [j]ury must weigh.
So the bottom line is, to recap on this case, in other words, this could be two phases. If, and only if, the [j]ury finds [Valdez] guilty of first-degree murder, then we go into the second phase.
Then we’ll have more evidence, more instructions, and you go out and deliberate what you think the penalty would be.
After the district court explained that there would be a separate penalty phase if the jury found Valdez guilty of first-degree murder, the deputy district attorney explained the procedure for determining punishments:
Basically, the only case, as the [cjourt told you, that a jury decides the punishment is first-degree murder. That’s the bottom line.
Anything else the [cjourt does it.
You’re going to be told you’re not to consider the punishments.
At the conclusion of the guilt phase, however, neither party submitted an instruction regarding the bifurcated guilt and penalty proceedings, and the record is silent regarding why such an instruction was not given. Because the record does not demonstrate that the parties agreed to forgo a written instruction before deliberations, we presume objection to the oral jury instruction and review the district court’s oral instruction for abuse of discretion or judicial error.[5]
We conclude that the district court abused its discretion by not giving the jury a written bifurcation instruction at the close of ar *1184 gument. Because the district court gave the instruction only during the jury selection process and not after closing arguments, the jury, over the course of the trial, could have forgotten the instruction or decided to disregard it. In fact, this is precisely what happened as evidenced by the jury’s deliberation of the penalty during the guilt phase, despite the judge’s note explaining that the penalty phase would not proceed the same day as the guilt phase deliberations. Further, the jury foreperson apologized, explaining, “[w]e did not know of the steps, and the procedures,” indicating that the jury had, in fact, forgotten the oral instruction.
In sum, this case demonstrates that instructing the jury orally and only during jury selection regarding the separate guilt and penalty phases in a first-degree murder trial is insufficient. The instruction error directly contravened Nevada law, causing subsequent jury misconduct. Such judicial error requires that we reverse and remand.

The jury’s deliberation of the penalty during the guilt phase

Valdez further contends that reversal is required because the jurors committed misconduct when they deliberated the sentence during the guilt phase of the trial. We agree.

Constitutional considerations

There are two constitutional dangers inherent in not separating the guilt and penalty phases of a criminal trial. One is that the jury may make a sentencing determination without the necessary instructions and information, resulting in an arbitrary and capricious determination of capital sentences in violation of the defendant’s Eighth Amendment rights.[6] The second is that the jury may improperly alter the verdict to affect the sentence, violating the defendant’s Sixth Amendment right to a fair trial by an impartial jury.[7]
The United States Constitution’s Eighth Amendment ban on cruel and unusual punishment requires that when the State seeks *1185 the death penalty, the trial court must take special precautions to ensure that the decision whether to impose the death penalty is not arbitrary or capricious.[8] Jurors, who typically have no sentencing experience, require careful and adequate guidance in their capital sentencing determinations, including specific and accurate information about the defendant and the crime.[9] However, much of the information jurors need to make a rational sentencing determination has no relevance to guilt or may be extremely prejudicial to the determination of guilt.[10] In addressing this concern, Nevada has determined that a bifurcated trial with separate guilt and sentencing phases is appropriate in first-degree murder cases.[11]
The second risk to the defendant’s constitutional rights, if the sentencing phase is not separate from the guilt phase, is that the jury may improperly consider the penalty when deciding guilt and alter the verdict to impose a greater or lesser sentence.[12] Such jury misconduct would violate the defendant’s Sixth Amendment right to a fair trial by an impartial jury.[13]
In this case, the jury deliberated and advised the court it had reached Valdez’s sentence; however, the jury did not disclose the sentence. The jury did not hear specific evidence regarding Valdez or the crime, as required by the Eighth Amendment.[14] Nor did the jury hear any aggravating or mitigating circumstances, as outlined in NRS 175.552. Further, the jury was not instructed regarding the available sentences, and the district court and prosecutor’s oral comments mentioning bifurcation were insufficient to instruct the jury regarding sentencing. Therefore, the jury decided Valdez’s sentence without the necessary information or instructions, rendering the sentencing determination arbitrary and capricious, in violation of the Eighth Amendment.[15]
The jury misconduct also denied Valdez his Sixth Amendment right to a fair trial by an impartial jury. In Holland v. State, the Mississippi Supreme Court held that a jury’s premature penalty deliberations in a capital case denied the defendant his right to a fair trial in the sentencing phase.[16] In Holland, while the trial court and *1186 counsel were preparing for the sentencing hearing outside the presence of the jury, the jury deliberated and sentenced Holland to death.[17] The judge then instructed the jury that it could not make its penalty determination until after the sentencing hearing. The sentencing hearing proceeded, and the jury sentenced Holland to death.[18] The Mississippi Supreme Court reversed the conviction, holding that the judge’s instruction was insufficient to cure the violation of Holland’s right to a fair trial.[19] Similarly, the jury in this case prematurely deliberated Valdez’s penalty. However, in this case, the misconduct was more egregious because the jury had not yet made the guilt determination, as it had in Holland.
When a juror prematurely forms an opinion in a case, the burden shifts to the defendant to change the juror’s opinion, which violates the defendant’s right to an impartial jury.[20] Not only is it more difficult to change a juror’s premature decision, but a juror may be reluctant to change his or her opinion after disclosing it to the other jurors.[21] In this case, the jury may have determined the penalty it thought appropriate and then decided Valdez’s guilt, which violates Valdez’s right to a fair trial in the guilt phase. Further, if the jury had decided to sentence Valdez to death, Valdez would have had the burden to change the jury’s decision, which violates Valdez’s right to an impartial jury in the sentencing phase. The jury’s premature sentencing decision violated Valdez’s right to a fair trial and an impartial jury in both phases.

Mistrial based on jury misconduct

A jury’s failure to follow a district court’s instruction is intrinsic juror misconduct.[22] When the district court denies a motion for a mistrial based on such misconduct, we review the decision for an abuse of discretion.[23] “[A] new trial must be granted unless it appears, beyond a reasonable doubt, that no prejudice has resulted” from the jury misconduct.[24] The defendant must prove the nature *1187 of the jury misconduct and that there is a reasonable possibility that the misconduct affected the verdict.[25] The defendant may only prove the misconduct using objective facts and not the “state of mind or deliberative process of the jury.”[26]
In this case, the jury committed misconduct by failing to follow the oral bifurcation instruction, which the court and prosecutor gave during jury selection, and the district court’s written response to the jury’s question about penalty deliberations. The jury foreperson’s statement that the jury had decided Valdez’s sentence was objective evidence of the misconduct.[27] Thus, the jury’s actions constituted intrinsic jury misconduct.
There is a reasonable probability that the misconduct affected the verdict because the jury considered the penalty while deliberating Valdez’s guilt.[28] In particular, the jury may have compromised, selecting the guilty verdict to impose the desired penalty. While the State argues that Valdez could not have been prejudiced because he stipulated to the sentence on the murder conviction, this argument fails to address the prejudice Valdez sustained in the jury’s determination of his guilt or innocence.
In determining whether there is a reasonable probability that the juror misconduct affected the verdict, the district court must consider many factors including the timing of the misconduct, whether it involved a collateral or material issue, whether the information was admissible, and its influence in light of the entire trial.[29] In this case, the timing was critical. The jury prematurely deliberated Valdez’s sentence while it was determining his guilt. This conduct violated Valdez’s constitutional rights. Any discussion of Valdez’s penalty was material to the penalty phase only and not to the guilt phase. Because of the possibility that the jury decided Valdez’s guilt by choosing its desired sentence, rather than based on the evidence, there is a reasonable probability that the jury’s deliberation of Valdez’s sentence while deliberating his guilt affected the verdict. The State did not prove beyond a reasonable doubt that the error did not cause Valdez prejudice.
Finally, the improper deliberations likely influenced Valdez to forgo a penalty hearing. Valdez knew that the jury found him *1188 guilty of a capital crime, but he did not know which sentence it had reached. This may have caused Valdez to fear the jury had decided on a sentence of death. The jury had not been instructed regarding sentencing. Therefore, the only sentence of which the jury would have been aware was the death penalty because it was discussed during jury selection. Thus, Valdez’s stipulation to two life sentences is not surprising given that the jury misconduct could have cost him his life. Had Valdez chosen to proceed to the penalty phase, the jury misconduct may have put the burden on him to persuade the jurors to change their premature decision to sentence him to death.[30] This denied Valdez both an impartial jury to determine his guilt and an impartial jury during sentencing. The jury was not instructed regarding a sentencing range, aggravating circumstances, mitigating circumstances, or the process of weighing such circumstances. Therefore, even if the oral comments during jury selection were sufficient as a bifurcation instruction, which they were not, they were not adequate as sentencing instructions. Thus, the jury’s deciding a sentence with no instructions at all was prejudicial.[31]
Because the jury misconduct violated Valdez’s Eighth and Sixth Amendment rights and the district court abused its discretion in refusing to grant a mistrial, we conclude that the jury misconduct warrants reversal.

Prosecutorial misconduct

Before turning to Valdez’s claims of prosecutorial misconduct, we first address the analysis to be applied when dealing with such claims. When considering claims of prosecutorial misconduct, this court engages in a two-step analysis.[32] First, we must determine whether the prosecutor’s conduct was improper.[33] Second, if the conduct was improper, we must determine whether the improper conduct warrants reversal.[34]
With respect to the second step of this analysis, this court will not reverse a conviction based on prosecutorial misconduct if it was harmless error. The proper standard of harmless-error review depends on whether the prosecutorial misconduct is of a constitu *1189 tional dimension.[35] If the error is of constitutional dimension, then we apply the Chapman v. California standard and will reverse unless the State demonstrates, beyond a reasonable doubt, that the error did not contribute to the verdict.[36] If the error is not of constitutional dimension, we will reverse only if the error substantially affects the jury’s verdict.[37]
We recognize that this court has not always been careful to characterize specific instances of prosecutorial misconduct as constitutional or nonconstitutional error and has most often defaulted to the Chapman standard for constitutional errors when considering the harmlessness of prosecutorial misconduct.[38] Whether these distinctions make a significant difference in the ultimate analysis of harmlessness may be the subject of some debate,[39] but constitutional and nonconstitutional errors are, nonetheless, subject to different harmless-error standards.
Determining whether a particular instance of prosecutorial misconduct is constitutional error depends on the nature of the misconduct.[40] For example, misconduct that involves impermissible comment on the exercise of a specific constitutional right has been addressed as constitutional error.[41] Prosecutorial misconduct may also be of a constitutional dimension if, in light of the proceedings as a whole, the misconduct ‘“so infected the trial with unfairness as to make the resulting conviction a denial of due process.’ ”[42]
*1190 Harmless-error review applies, however, only if the defendant preserved the error for appellate review.[43] Generally, to preserve a claim of prosecutorial misconduct, the defendant must object to the misconduct at trial because this “allowfs] the district court to rule upon the objection, admonish the prosecutor, and instruct the jury ”[44] when an error has not been preserved, this court employs plain-error review.[45] Under that standard, an error that is plain from a review of the record does not require reversal unless the defendant demonstrates that the error affected his or her substantial rights, by causing “actual prejudice or a miscarriage of justice.”[46] We now turn to Valdez’s specific claims of prosecutorial misconduct.

Jury selection

Prosecution’s opening remarks

Valdez argues that the prosecutor committed misconduct during jury selection by mentioning that there had been pretrial publicity, by referring to S.E. as a “little boy,” and by describing the circumstances preceding Valdez’s arrest as a “man hunt.” In particular, during his opening remarks, the prosecutor described the crime, explaining:
On that same day, there was a lot of press in this case because a little boy that’s 12 years old got stabbed in the chest and he ran out of the apartment. He had a broken piece of the knife stuck in his chest still, and there was a little bit of a man hunt type of thing, so it was in the press.
Eventually, [Valdez] is the one that was apprehended.
*1191 (Emphases added.) Valdez suggests that these comments improperly inflamed the jury’s passions against him. As the defense did not object, we apply plain-error review.
The first two comments were not improper. Since the district court may properly permit inquiry of potential jurors regarding their possible exposure to pretrial publicity,[47] we conclude that the prosecutor did not engage in misconduct by alerting the jury to the pretrial publicity. Regarding the use of the descriptor “little boy,” we conclude that this was not prosecutorial misconduct because S.E. was indeed a child when he was stabbed.[48]
In contrast, the reference to a “man hunt” was improper. A prosecutor may not “blatantly attempt to inflame a jury.”[49] We conclude that the use of the term “man hunt” was an attempt to inflame the jury because it was an inaccurate description of the arrest. The police merely called Valdez on his cellular phone and arrested him without resistance. Applying plain-error review, however, we conclude that the “man hunt” statement, standing alone, did not affect Valdez’s substantial rights. But this statement contributed to the cumulative error in this case, which, as discussed below, requires reversal.

Prosecutor’s comment suggesting Valdez did not have a problem with killing kids

Valdez argues that during jury selection, the prosecutor made a comment that offered his personal opinion, appealed to the jury’s fears or passions, and disparaged Valdez. During jury selection, a potential juror stated, “Well, I just don’t think they [anyone] should kill kids.” The prosecutor responded, “Okay. Well, I don’t think anybody in here, with maybe one exception, would ever think that they should kill kids.” The district court sustained the defense’s objection to this comment, instructed the jury to disregard it, and admonished the prosecutor not to do it again. The *1192 defense promptly moved for a mistrial, which the district court denied.[50] As Valdez preserved the issue for appellate review, we apply harmless-error analysis.
This court has long recognized that a prosecutor should be ‘ ‘ ‘unprejudiced, impartial, and nonpartisan,’ ’ ’ and he should not inject his personal opinion or beliefs into the proceedings or attempt to inflame the jury’s fears or passions in the pursuit of a conviction.[51] The comment in this case aroused emotions and invoked the prosecutor’s personal opinion. For these reasons, we conclude that the comment was improper.
Although the comment was improper, we conclude that there was no prejudice because the district court sustained Valdez’s objection and instructed the jury to disregard the comment.[52] Additionally, we conclude that this improper comment did not infect the proceedings so as to impair Valdez’s constitutional due process right to a fair trial.[53] Thus, we apply the harmless-error analysis for prosecutorial misconduct of a nonconstitutional dimension. In doing so, we conclude that the prosecutor’s comment alone did not substantially affect the verdict because this statement was made early on in the proceedings, and there was substantial evidence that Valdez attempted to kill S.E. But this comment contributed to the cumulative error in this case, as discussed below.

Prosecution’s explanation of aggravators and the four possible punishments in this case

Valdez argues that the prosecutor’s explanation of aggravators and the four possible punishments during jury selection was argumentative, was not supported by the trial evidence, consisted of the prosecutor’s personal opinion, and was irrelevant and prejudicial to the jury selection process. “A prosecutor has the duty to refrain from stating facts in opening statement that he [or she] cannot *1193 prove at trial.’ ’[54] Further, as noted above, a prosecutor should not inject his or her own personal beliefs and opinions.[55]
During jury selection, the prosecutor addressed the charges and possible punishments as follows:
There’s two other charges here: Attempted] murder and assault with a deadly weapon.
In the event you find him guilty of that, you would not be sentencing him on that. The [c]ourt decides that.
So those four punishments are the range that you would be determining, and as we’ve kind of alluded to, we have to prove an aggravator or multiple aggravators that are statutorily required.
There are a lot[ ] of first-degree murders out there that we’ll never ever have the opportunity for the death sentence, and the reason why is because there’s no aggravators.
The defense objected that this was not a correct statement of the law. The district court responded that the State had conveyed the general rule and instructed the parties to move on.
Although the prosecutor referred to unprovable facts regarding the first-degree murder cases, which were not capital cases, and he injected his own personal opinion, we conclude that this error was nonconstitutional because the prosecutor stated the general rule regarding the court’s sentencing for attempted murder and assault and the State’s burden to prove aggravators. We further conclude, however, that although this error alone would not warrant reversal, it contributed to cumulative error that requires reversal.

Examination of witnesses

Prosecution’s questioning of the security guard

Valdez argues that the prosecutor improperly implied his opinion and attempted to inflame the prejudices and passions of the jury when he asked the security guard whether events would have been different if he had been armed. In particular, when the prosecutor examined the security guard about Valdez’s chasing him, the prosecutor inquired, “Based on — would things have been different back then if you were armed?” The defense promptly objected, and the district court sustained the objection.
We conclude that the prosecution’s question did not constitute prosecutorial misconduct and there was no prejudice because the *1194 district court sustained the defense’s objection and instructed the prosecutor to move on.

Prosecution’s questioning of Dr. Bittker

Valdez argues that the State committed flagrant prosecutorial misconduct. The district court prohibited any suggestion that the defense prevented the State’s expert witness, forensic psychiatrist Dr. Thomas Bittker, from interviewing Valdez. Valdez argues that the prosecutor disregarded this ruling.
An attorney should not flagrantly disobey a district court’s ruling.[56] In McGuire v. State, the district court ruled that the prosecutor could not refer to the defendant’s prior felony convictions.[57] The prosecutor improperly commented to the jury, at least twice, that it should consider the defendant’s prior convictions to decide whether the defendant was guilty.[58] This court concluded that the prosecutor’s “flagrant” violation was “simply intolerable.”[59]
During direct examination of Dr. Bittker, the prosecutor asked him to inform the jury about his packet of information on Valdez. In his answer, Dr. Bittker stated that he was not permitted access to Valdez. The defense objected and moved to strike the answer. The district court sustained the objection and instructed the jury to disregard the comment.
During cross-examination of Dr. Bittker, defense counsel elicited testimony that while Dr. Bittker preferred to interview people before making a final assessment, he had not interviewed Valdez, which meant that the defense’s expert witness, who had interviewed Valdez, had more information when he made his diagnosis. During redirect examination of Dr. Bittker, the prosecutor inquired, “You asked to do an interview with [Valdez], didn’t you?” The defense objected, and the prosecutor argued that the defense brought up the issue on cross-examination. The district court sustained the objection and reminded the jury not to make any adverse inference.
We conclude that the prosecutor violated the district court’s ruling, and thereby committed misconduct. This misconduct was non- *1195 constitutional in nature but necessitated two limiting instructions from the district court, which highlighted the inference that Valdez denied Dr. Bittker an interview. Applying the proper harmless-error analysis, we conclude that this violation alone would not warrant reversal. But in conjunction with the multiple errors in this case, cumulative error warrants reversal as discussed below.

Closing argument

Valdez argues that the prosecutor committed misconduct during closing arguments by improperly injecting his opinion and attempting to inflame the prejudices and passions of the jury regarding injuries to a child. In particular, Valdez challenges the prosecutor’s statement commenting on the defense’s theory that S.E. stabbed Valdez in the hand, that “[y]ou know what, [S.E.] should have got a knife and he should have stabbed it right into the back of — .” The defense objected that the comment was inflammatory and should be stricken. The district court sustained the objection, ordered the comment stricken, and instructed the jury to disregard it.
We conclude that the prosecutor’s comment was improper and constituted prosecutorial misconduct. This error was, however, nonconstitutional. It did not infect the trial with unfairness so as to affect the verdict and deny Valdez his constitutional right to a fair trial. /We conclude that the error alone would have been harmless, but it contributed to cumulative error requiring reversal.

Cumulative error

Valdez argues that even if the previously discussed errors are harmless, together they violate his right to a fair trial. We agree.
“The cumulative effect of errors may violate a defendant’s constitutional right to a fair trial even though errors are harmless individually.”[60] When evaluating a claim of cumulative error, we consider the following factors: “(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged.”[61] This court must ensure that harmless-error analysis does not allow prosecutors to engage in misconduct by overlooking cumulative error in cases with substantial evidence of guilt.[62]
*1196 In this case, the evidence of guilt, absent multiple errors, would have been sufficient to support Valdez’s conviction. However, considering the district court’s inadequate instruction to the jury regarding bifurcation, prosecutorial misconduct, and juror misconduct, the evidence does not overcome the unfairness of the cumulative error.

Evidence of guilt

As for the first cumulative error factor, we conclude that the issue of innocence or guilt was close enough that although the evidence was sufficient to support the jury’s verdict, it was not overwhelming, and therefore cannot overcome the prejudice caused by the accumulated errors.

First-degree murder

Pursuant to NRS 200.030(l)(a), a conviction of first-degree murder requires the jury to conclude that the defendant committed a “willful, deliberate and premeditated killing.” “Willfulness is the intent to kill.”[63] Deliberation requires a thought process and a weighing of the consequences.[64] “Premeditation is a design, a determination to kill, distinctly formed in the mind by the time of the killing.”[65]
In this case, we conclude that although the evidence supports the jury’s verdict that Valdez murdered Tilden with willfulness, premeditation, and deliberation, the evidence, particularly as to Valdez’s intent, is not overwhelming for three reasons. First, Valdez and Tilden were drinking alcohol and arguing, which could support an inference of a sudden attack in anger rather than premeditation and deliberation. Second, there was conflicting testimony as to whether Valdez was calm or angry when he returned to the apartment, also calling into question his premeditation and deliberation. Third, Valdez presented expert witness testimony that he suffered from cognitive impairment that limited his ability to exercise good judgment and control his impulses. Therefore, we conclude that although there was sufficient evidence to support Valdez’s conviction for first-degree murder, the evidence was not overwhelming.

*1197
Attempted murder

“ ‘[Attempted murder is the performance of an act or acts which tend, but fail, to kill a human being, when such acts are done with express malice, namely, with the deliberate intention unlawfully to kill.’ ”[66] NRS 193.200 provides that intent “is manifested by the circumstances connected with the perpetration of the offense.” Thus, “intent can rarely be proven by direct evidence of a defendant’s state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime.”[67] Further, the jury may infer intent to kill from the manner of the defendant’s use of a deadly weapon.[68]
We conclude that sufficient evidence supported the jury’s verdict that Valdez intended to kill S.E., but the evidence was not overwhelming. Valdez testified that S.E. threatened and stabbed him. Also, there was conflicting testimony as to whether Valdez punched or stabbed S.E. when he was lying on the ground outside of the apartment. A rational jury could infer that Valdez intended to kill S.E., but the evidence of guilt was not overwhelming.

Quantity and character of error

As for the second factor of our cumulative error analysis, we conclude that the quantity and character of the errors was substantial. The district court’s failure to instruct the jury on bifurcation in writing, after the conclusion of argument, resulted in serious jury misconduct because the jury deliberated on Valdez’s guilt and sentence simultaneously. This misconduct denied Valdez his Eighth Amendment right to a rational sentence not reached in an arbitrary and capricious manner and his Sixth Amendment right to a fair trial by an impartial jury in both phases. As a result of this misconduct, Valdez waived his right to a penalty hearing before the jury, possibly out of fear that the jury had predetermined a sentence of death before he had the chance to present evidence of mitigating circumstances.
The prosecutorial misconduct was also significant. The prosecutorial misconduct occurred throughout the trial, including during jury selection, while questioning an expert witness, and in closing, as discussed above. As a result, a reasonable juror could have in *1198 ferred from all of these comments that Valdez resisted arrest, felt no remorse for harming S.E., and should be put to death to compensate for all the other first-degree murderers who will never be put to death. Although we agree with the dissent that each of these instances of prosecutorial misconduct, taken alone, would not have warranted reversal, we conclude that taken together and considering the other errors in this trial, the conduct denied Valdez a fair trial.

Gravity of crime charged

As for the third cumulative error factor, we conclude that the crimes charged, first-degree murder with a deadly weapon and attempted murder with a deadly weapon, are very grave. But the evidence was not overwhelming, and “[w]e cannot say without reservation that the verdict would have been the same in the absence of error.”[69]
Having considered all three factors, we conclude that the cumulative effect of the errors denied Valdez a fair trial and require reversal of Valdez’s conviction.

CONCLUSION

We conclude that the district court’s failure to give a written instruction regarding bifurcation was an abuse of discretion. The resulting juror misconduct denied Valdez’s constitutional rights and warrants reversal. Further, we conclude that the instruction error, together with the jury and prosecutorial misconduct, are cumulative error requiring reversal of Valdez’s conviction. Accordingly, we reverse the judgment of conviction and remand this matter to the district court for proceedings consistent with this opinion.
Maupin, Douglas, Cherry and Saitta, JJ., concur.

Valdez also challenges (1) the sufficiency of the evidence; (2) the district court’s comments during jury selection; (3) the district court’s admission of S.E.’s testimony regarding Valdez’s instructing Tilden to discipline S.E. with the metal side of a belt; (4) the district court’s instructions regarding heat of passion, intoxication and mental defect, and flight; and (5) the district court’s failure to ask Valdez why he did not have two attorneys during the pretrial phase and then not appointing him a second attorney. As discussed later in this opinion, we conclude that the State presented sufficient evidence to support the jury’s verdict. See Origel-Candido v. State, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); Jackson v. Virginia, 443 U.S. 307, 319 (1979). We decline to reach the remaining issues because we reverse on other grounds.

The jury never disclosed the sentence on which it had decided.

 Moore v. State, 88 Nev. 74, 75-76, 493 P.2d 1035, 1036 (1972).

 Harvey v. State, 78 Nev. 417, 422-23, 375 P.2d 225, 227-28 (1962) (interpreting prior version of statute).

 Grey v. State, 124 Nev. 110, 122, 178 P.3d 154, 163 (2008). Alternatively, we would reach the same result if we reviewed for plain error because failure to give the bifurcation instruction was patently prejudicial and the district court had a sua sponte duty to protect the defendant’s right to a fair trial. Flanagan *1184 v. State, 112 Nev. 1409, 1423, 930 P.2d 691, 700 (1996) (holding patently prejudicial instruction error triggers court’s sua sponte duty); Garcia v. State, 121 Nev. 327, 334, 113 P.3d 836, 840 (2005) (holding that absent objection, this court reviews instruction error for plain error).

 Gregg v. Georgia, 428 U.S. 153, 188-93 (1976).

 See People v. Shannon, 305 P.2d 101, 106 (Cal. Ct. App. 1956) (noting that the jury may not consider the penalty when deciding guilt); Daniel v. State, 119 Nev. 498, 517, 78 P.3d 890, 903 (2003) (stating that defendants have a right to a fair trial by an impartial jury).

 Gregg, 428 U.S. at 188-89.

 Id. at 190-93.

 Id. at 190.

 NRS 175.552(1); see Gregg, 428 U.S. at 190.

 See Shannon, 305 P.2d at 106.

 Daniel v. State, 119 Nev. 498, 517, 78 P.3d 890, 903 (2003).

 Gregg, 428 U.S. at 188-93.

 Id.

 587 So. 2d 848, 874 (Miss. 1991).

 Id. at 872.

 Id.

 Id. at 874 (noting that it may have been sufficient for the judge to question each juror and determine that each of them remained impartial).

 Id. at 873.

 Id.

 Meyer v. State, 119 Nev. 554, 561, 80 P.3d 447, 453 (2003).

 Id.

 Lane v. State, 110 Nev. 1156, 1164, 881 P.2d 1358, 1364 (1994), overruled on other grounds by Leslie v. Warden, 118 Nev. 773, 780-82, 59 P.3d 440, 445-46 (2002).

 Meyer, 119 Nev. at 565, 80 P.3d at 456.

 Id. at 563, 80 P.3d at 454.

 See id.

 See id. at 565, 80 P.3d at 456.

 Id. at 566, 80 P.3d at 456.

 Holland v. State, 587 So. 2d 848, 873 (Miss. 1991).

 The dissent admits that the jury committed misconduct when it disregarded the oral bifurcation instruction during jury selection, but offers no explanation for the jury’s decision to decide a sentence without any evidence or instructions.

 U.S. v. Harlow, 444 F.3d 1255, 1265 (10th Cir. 2006) (“Reviewing claims of prosecutorial misconduct entails a two-step analysis.”).

 Id.

 Id.

 See Tavares v. State, 117 Nev. 725, 732, 30 P.3d 1128, 1132 (2001); accord Harlow, 444 F.3d at 1265.

 386 U.S. 18, 24 (1967); Tavares, 117 Nev. at 732, 30 P.3d at 1132.

 Tavares, 117 Nev. at 732, 30 P.3d at 1132 (citing Kotteakos v. United. States, 328 U.S. 750, 776 (1946)); accord Harlow, 444 F.3d at 1265.

 E.g., Bridges v. State, 116 Nev. 752, 764, 6 P.3d 1000, 1009 (2000) (applying the Chapman standard where the prosecutor referred to the defendant’s assertion of his constitutional right not to testify); Coleman v. State, 111 Nev. 657, 664, 895 P.2d 653, 657 (1995) (applying the Chapman standard to the prosecutor’s comment on the defendant’s assertion of his constitutional right to post-arrest silence). But see Harris v. State, 90 Nev. 172, 173, 521 P.2d 367, 367-68 (1974) (applying the Chapman standard to alleged prosecutorial misconduct regarding presenting testimony and displaying evidence with an insufficient foundation).

 See Brecht v. Abrahamson, 507 U.S. 619, 643 (1993) (Stevens, J., concurring) (observing that because both standards require the application of judgment, “the difference is less significant than it might seem”).

 See Harlow, 444 F.3d at 1266 (noting that improper vouching for witnesses constitutes an error of nonconstitutional dimension).

 E.g., Chapman, 386 U.S. at 21, 24; Bridges, 116 Nev. at 764, 6 P.3d at 1009; Coleman, 111 Nev. at 664, 895 P2d at 657.

 Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)).

 See United States v. Olano, 507 U.S. 725, 731-32 (1993) (indicating that harmless-error review applies to “nonforfeited” errors but that plain-error review applies to “forfeited” errors).

 Hernandez v. State, 118 Nev. 513, 525, 50 P.3d 1100, 1109 (2002). We note that in Clark v. State, this court held that even if the defendant objects to prosecutorial misconduct, “the failure to move to strike, move for a mistrial, assign misconduct or request an instruction, will preclude appellate consideration [of prosecutorial misconduct].” 89 Nev. 392, 393, 513 P.2d 1224, 1224-25 (1973). However, in Harkness v. State, this court noted that objections to the prosecutor’s general line of questioning or argument are sufficient to preserve the issue for appeal under harmless-error analysis. 107 Nev. 800, 802 n.l, 820 P.2d 759, 760 n.l (1991).

 See Green v. State, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (explaining that failure to object to a jury instruction precludes appellate review except in circumstances amounting to plain error under NRS 178.602).

 Id.; see also Olano, 507 U.S. at 734 (“In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial.”).

 See Leonard v. State, 117 Nev. 53, 64, 17 P.3d 397, 404 (2001) (concluding that the district court did not abuse its discretion when it refused to allow individual voir dire of all prospective jurors because “the district court ensured sufficient inquiry of the prospective jurors, including inquiry into pretrial publicity”).

 See Johnson v. State, 122 Nev. 1344, 1356, 148 P.3d 767, 775-76 (2006) (concluding, in a capital murder case, that the terms “boys” or “kids” were not inappropriate or prejudicial descriptions for the defendant’s victims, who were 17 to 20 years old).

 Collier v. State, 101 Nev. 473, 479, 705 P.2d 1126, 1130 (1985).

 The record reveals that the district court indicated that it would discuss the mistrial motion later, but the record is silent regarding further discussion.

 Collier, 101 Nev. at 480, 705 P.2d at 1130 (quoting State v. Rodriguez, 31 Nev. 342, 346, 102 P. 863, 864 (1909)).

 See Greene v. State, 113 Nev. 157, 170, 931 P.2d 54, 62 (1997) (concluding there was no prejudice when the district court sustained a defense objection to a prosecutor’s “patently improper” statement and admonished the jury), overruled on other grounds by Byford v. State, 116 Nev. 215, 235, 994 P.2d 700, 713 (2000).

 See id. at 169, 931 P.2d at 62 (explaining that if this court determines that the prosecutor made improper comments, this court must then determine whether the comments denied the defendant due process).

 Id. at 170, 931 P.2d at 62.

 Collier, 101 Nev. at 480, 705 P.2d at 1130.

 See McGuire v. State, 100 Nev. 153, 156, 677 P.2d 1060, 1063 (1984) (concluding that the prosecutor’s “flagrant violation” of the district court’s order, along with other improper statements, constituted prosecutorial misconduct).

 Id.

 Id.

 Id.

 Hernandez v. State, 118 Nev. 513, 535, 50 P.3d 1100, 1115 (2002).

 Mulder v. State, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000).

 Kelly v. State, 108 Nev. 545, 559-60, 837 P.2d 416, 425 (1992) (Young, J., dissenting).

 Byford v. State, 116 Nev. 215, 236, 994 P.2d 700, 714 (2000).

 Id.

 Id. at 237, 994 P.2d at 714.

 Sharma v. State, 118 Nev. 648, 652, 56 P.3d 868, 870 (2002) (quoting Keys v. State, 104 Nev. 736, 740, 766 P.2d 270, 273 (1988)).

 Id. at 659, 56 P.3d at 874.

 See Dearman v. State, 93 Nev. 364, 367, 566 P.2d 407, 409 (1977).

 Big Pond v. State, 101 Nev. 1, 3, 692 P.2d 1288, 1289 (1985).