# IN THE SUPREME COURT OF THE STATE OF NEVADA

MICHAEL DEANGELO MCNAIR,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 78871

FILED

FEB 24 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon and carrying a concealed firearm or other deadly weapon.[1] Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge. Appellant makes seven claims on appeal.

Appellant first argues the district court erred by denying his fair-cross-section challenge to the venire. Appellant claimed the jury commissioner's non-compliance with NRS 6.045(3)—specifically, the requirement to "compile and maintain a list of qualified electors from information provided by . . . (c) [t]he Employment Security Division of the Department of Employment, Training and Rehabilitation [DETR]"—proved systematic exclusion of Hispanics from the venire. *See Valentine v. State*, 135 Nev. 463, 465, 454 P.3d 709, 713 (2019) (listing the three showings required for a prima facie fair-cross-section violation, including that the allegedly excluded group be "a distinctive group in the community . . . that the representation of this group in venires . . . is not fair and reasonable in

---

[1]Pursuant to NRAP 34(f)(1), we have determined that oral argument is not warranted in this appeal.

relation to the number of such persons in the community" and that the "systematic exclusion of the group in the jury-selection process" caused the underrepresentation (quotation marks omitted)). Appellant, however, did not show that Clark County systematically excludes Hispanics from the jury selection process as he made no allegation connecting the missing information from DETR to the underrepresentation of Hispanics in the venire. Accordingly, appellant did not establish a prima facie violation of the fair-cross-section requirement, and the district court did not err by denying his challenge.

Next, appellant argues the district court erred by denying his *Batson*[2] objections to the State's use of peremptory challenges to dismiss three veniremembers. Courts resolve a *Batson* objection to a peremptory challenge using a three-step framework. *See Batson*, 476 U.S. at 93-98, *Kaczmarek v. State*, 120 Nev. 314, 332, 91 P.3d 16, 29 (2004); *see also Williams v. State*, 134 Nev. 687, 689-92, 429 P.3d 301, 305-07 (2018) (explaining the three-step framework as the opponent making a prima facie showing of impermissible discrimination, the proponent offering a neutral, permissible explanation for the strike, and the opponent proving purposeful discrimination). "Because the district court is in the best position to rule on a *Batson* challenge, its determination is reviewed deferentially, for clear error." *Williams*, 134 Nev. at 689, 429 P.3d at 306.

Here, the State gave its race-neutral reasons for the peremptory challenges before the district court made a determination regarding step one of the analysis, so step one is moot. *See id.* at 690-91, 429 P.3d at 306-07. The State offered race-neutral reasons for the challenges (step two), and

---

[2]*Batson v. Kentucky*, 476 U.S. 79 (1986).

SUPREME COURT
OF
NEVADA

(O) 1947A

2

the district court gave a thoughtful and considered discussion about its conclusion that appellant had not shown purposeful racial discrimination (step three).[3] In accord with the race-neutral reasons offered by the State, the district court agreed that prospective Juror #50 said she distrusted police officers and would assess a uniformed officer's credibility differently than other witnesses, that prospective Juror #68 had family who had been incarcerated and viewed rehabilitation and incarceration issues differently because of that experience, and that prospective Juror #37 was "very, very quiet and reserved, kind of a more meek individual" who could cause concern because she "may just follow along with whatever the majority is."[4] *See Matthews v. State*, 136 Nev. 343, 345, 466 P.3d 1255, 1260 (2020) (recognizing that step-three conclusions "often turn[ ] upon ... the demeanor of the juror being struck" and that demeanor determinations "lie

---

[3]We disagree with appellant's contention that the district court precluded him from arguing the State's race-neutral reasons for the challenges were pretextual. Our review of the record shows that, after the State gave its race-neutral reasons, the district court asked "[a]nything further from the Defense," and appellant gave further argument regarding his *Batson* objections.

[4]Appellant focuses on comparative juror analysis, pointing to prospective Juror #77, who was not struck by the State and who described himself as timid and shy, to show the district court erred with respect to prospective Juror #37. We have acknowledged the difficulties associated with conducting a comparative juror analysis for the first time on appeal, *see Nunnery v. State*, 127 Nev. 749, 784 n.17, 263 P.3d 235, 258 n.17 (2011), but nevertheless consider appellant's argument and find it is without merit. As prospective Juror #77 indicated he felt comfortable voicing his opinion in front of others, in contrast to prospective Juror #37's affirmation that she would "just kind of go with the majority and stay quiet," comparative juror analysis does not support a conclusion that the State's explanation was a pretext for racial discrimination.

uniquely within the province of the district judge" (quotation marks omitted)). Because the district court made clear findings supported by the record, we perceive no clear error in the denial of appellant's *Batson* objections.

Third, appellant argues the State presented insufficient evidence to support his conviction for first-degree murder. "Murder of the first degree is murder which is perpetrated by means of any kind of willful, deliberate, and premeditated killing." *Byford v. State*, 116 Nev. 215, 236, 994 P.2d 700, 714 (2000); *see also* NRS 200.030(1)(a). Here, the State presented evidence that the victim and appellant had a verbal altercation, that the victim and appellant both walked away but appellant approached the victim two more times, that appellant pointed toward the location of the victim with a firearm in his hand,[5] and that appellant—the taller of the two men near the victim when he was murdered—shot the victim multiple times. A backpack containing a magazine addressed to appellant's residence was found with a gun inside it, and witnesses explained that the cartridge cases recovered at the scene were shot from that gun and that the gun contained a DNA profile from two contributors, one of which was appellant. The gun belonged to a relative of appellant's wife. Although appellant points to inconsistencies in the evidence presented, "[t]his court will not reweigh the evidence or evaluate the credibility of witnesses

---

[5]Although extensive video surveillance was introduced at trial, including video surveillance of appellant pointing toward the location of the victim with a firearm in his hand, appellant did not ask that any video evidence be transmitted to this court as part of the record on appeal. *See Greene v. State*, 96 Nev. 555, 558, 612 P.2d 686, 688 (1980) ("The burden to make a proper appellate record rests on appellant."); *see also* NRAP 10(b)(1)-(2); NRAP 30(b)(3); NRAP 30(d).

because that is the responsibility of the trier of fact." *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008). And viewing the evidence in the light most favorable to the State, we conclude there is sufficient evidence from which a rational juror could find appellant guilty beyond a reasonable doubt of first-degree murder with the use of a deadly weapon. *See id.* (recognizing this court reviews a challenge to the sufficiency of the evidence in the light most favorable to the prosecution to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (quotation marks omitted)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

Fourth, appellant argues the State committed prosecutorial misconduct during closing arguments. We consider whether the conduct was improper and, if so, whether it warrants reversal. *See Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). Appellant first argues the prosecutor disparaged defense counsel when he used an analogy about shooting or having defense counsel shot because the prosecutor was angry at defense counsel for objecting during closing argument to explain different theories of liability for murder. The district court sustained appellant's objection, noting its belief that the prosecutor did not intend to disparage counsel. Later, appellant moved for a mistrial based on the analogy. The district court expressed its concern about the analogy but ultimately denied appellant's motion for a mistrial. We agree with the district court that the prosecutor's analogy was improper. *Cf. Butler v. State*, 120 Nev. 879, 898, 102 P.3d 71, 84 (2004) (recognizing it is improper "to disparage legitimate defense tactics"). But we conclude the improper analogy does not warrant reversal as it did not substantially affect the jury's verdict, given the overwhelming evidence establishing appellant's guilt. *Valdez*, 124 Nev. at

SUPREME COURT
OF
NEVADA

(O) 1947A

5

1188-89, 196 P.3d at 476 (explaining that, for error that "is not of constitutional dimension, [this court] will reverse only if the error substantially affects the jury's verdict");[6] *cf. Jones v. State*, 113 Nev. 454, 468-70, 937 P.2d 55, 64-65 (1997) (concluding no relief was warranted based on the overwhelming evidence of guilt where the prosecutor made a demeaning and unprofessional comparison of the defendant to a rabid animal). Additionally, the district court told the jury the hypothetical was an improper and regrettable analogy; explained the jury should not hold objections against an attorney, as objections are a part of an attorney's legal and ethical responsibility to zealously represent a client; and ordered the jury to disregard the analogy in its entirety. Those actions further defused any potential that the prosecutor's improper analogy prejudiced the defense. *See Valdez*, 124 Nev. at 1192, 196 P.3d at 478 (concluding that a comment was improper but "that there was no prejudice because the district court sustained [the] objection and instructed the jury to disregard the comment"). Based on the above, we further conclude appellant was not prejudiced to an extent that he was prevented from receiving a fair trial and therefore the district court did not abuse its discretion by denying the motion for a mistrial. *See Jeffries v. State*, 133 Nev. 331, 333, 397 P.3d 21, 25 (2017) (recognizing that it is within the district court's discretion to grant a motion for a mistrial and that such a motion may be granted "where some prejudice occurs that prevents the defendant from receiving a fair trial").

---

[6]Even were we to view this as misconduct of a constitutional dimension, as appellant urges, the State demonstrates beyond a reasonable doubt that the misconduct did not contribute to the verdict, and therefore no relief is warranted. *See Valdez*, 124 Nev. at 1188-89, 196 P.3d at 476-77.

Supreme Court
of
Nevada

(O) 1947A

Appellant's second argument regarding prosecutorial misconduct relates to the prosecutor's use of an analogy about the changing lights on a traffic signal to explain premeditation and deliberation. Appellant objected, and the district court overruled the objection. We agree with the district court that there was no improper conduct, *see People v. Wang*, 260 Cal. Rptr. 3d 343, 366-68 (Ct. App. 2020) (approving of prosecutor's analogy of the elements of premeditation and deliberation "to a driver's decision-making process in choosing whether to drive through a yellow traffic light or stop suddenly"); *cf. People v. Avila*, 208 P.3d 634, 665 (Cal. 2009); therefore, no relief is warranted.

Fifth, appellant argues the district court abused its discretion by allowing the State's investigator to testify about the credibility and character of three witnesses. Appellant first contends the investigator erroneously testified about his interactions with K.S., an unavailable witness, by saying K.S. had been uncooperative and inebriated on multiple occasions when the investigator encountered him. After the State asked the investigator about the difficulties in locating homeless individuals for court hearings, the investigator testified as to the difficulties he had in obtaining K.S.'s presence for a previous court hearing and in locating K.S. for trial. We conclude this testimony was proper as it explained to the jury K.S.'s absence from the trial. *See* NRS 51.325 (outlining the use of former testimony where declarant is unavailable as a witness). And to the extent a single question and answer about K.S.'s previous inebriation were improper, we conclude appellant has not shown plain error affecting his substantial rights given the overwhelming evidence of appellant's guilt. *See Green v. State*, 119 Nev. 542, 545, 80 P.3d 93, 95 (2003) (holding unobjected-to error is reviewed for plain error); *see also* NRS 178.602. Appellant also

SUPREME COURT
OF
NEVADA

(O) 1947A

7

contends the investigator erroneously testified regarding R.R.'s uncooperativeness about attending court hearings, thus discrediting R.R.'s trial testimony. Appellant acknowledges that R.R.'s trial testimony and his previous statements about the incident contained multiple contradictions and that the jury could see R.R. was agitated during his testimony. We are not convinced that the investigator's testimony regarding R.R.'s general reluctance to cooperate and testify was improper, particularly where the investigator did not imply that appellant engaged in witness intimidation. *See Lay v. State*, 110 Nev. 1189, 1193-94, 1198, 886 P.2d 448, 450-51, 453 (1994) (recognizing a witness's reluctance to become involved in a criminal investigation could explain inconsistencies in the witness's "statements at different stages of an investigation or proceeding"); *see also* NRS 50.085(1) (allowing "[o]pinion evidence as to the character of a witness . . . to attack or support the witness's credibility" provided that the evidence is "limited to truthfulness or untruthfulness" and that evidence of truthfulness only comes in after "other evidence impugning the witness's character for truthfulness"). And even were we to conclude the testimony was improper, appellant has not shown plain error affecting his substantial rights given the overwhelming evidence of his guilt.

Appellant further alleges the investigator improperly testified about statements M.J. made in the presence of the investigator and the prosecutor during a pretrial interview. First, appellant argues that the State violated the spirit of NRS 174.235 by not giving him any notes or evidence of M.J.'s previous statement from the pretrial interview, but appellant's argument fails based on a plain reading of the statute. M.J.'s pretrial interview was neither written nor recorded, and the State had no obligation to disclose what he said. Next, appellant argues that the

SUPREME COURT
OF
NEVADA

(O) 1947A

8

investigator's testimony regarding M.J.'s previous statement was hearsay. However, on direct examination M.J. denied telling the prosecutor that he turned around and saw the victim fall to the ground or the shooter. The investigator's testimony, that M.J. said he turned around, saw the victim fall, and saw appellant with a gun in his hand, was properly offered as a prior inconsistent statement under NRS 51.035(2)(a). Accordingly, the district court did not abuse its discretion by overruling appellant's objection and by admitting the investigator's testimony. *See Thomas v. State*, 122 Nev. 1361, 1370, 148 P.3d 727, 734 (2006) ("It is within the district court's sound discretion to admit or exclude evidence, and this court reviews that decision for an abuse of discretion or manifest error." (quotation marks omitted)).

Sixth, appellant argues the district court abused its discretion by denying his proposed jury instruction for the crime of voluntary manslaughter. "[A] defendant is entitled to a jury instruction on his theory of the case, so long as there is evidence to support it, regardless of whether the evidence is weak, inconsistent, believable, or incredible." *Newson v. State*, 136 Nev. 181, 188, 462 P.3d 246, 251 (2020) (quotation marks and emphasis omitted); *see also id.* at 185, 462 P.3d at 250 (recognizing "voluntary manslaughter as a lesser-included offense of murder"). For voluntary manslaughter, there must be "a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person, or an attempt by the person killed to commit a serious personal injury on the person killing." *Id.* (quoting NRS 200.050(1)). The evidence at trial was that appellant and the victim got in a verbal altercation about appellant turning down his music but that they both walked away. Appellant, along with M.J., later walked over to where

the victim was sitting. M.J. testified that the victim got to his feet as M.J. and appellant approached and that the victim "got too close." Because the victim's actions of standing up and getting "too close" to the men could be viewed as an attempt to seriously injure, the district court should have instructed the jury on appellant's theory of voluntary manslaughter. *See id.* at 186-88, 462 P.3d at 250-52. However, given the overwhelming evidence of first-degree murder, we are confident that the "verdict was not attributable to the error," and thus the error is harmless. *See Honea v. State*, 136 Nev. 285, 289-90, 466 P.3d 522, 526 (2020).

Lastly, appellant argues that cumulative error warrants relief. *See Valdez*, 124 Nev. at 1195, 196 P.3d at 481 (providing the relevant factors to consider for a claim of cumulative error). We disagree. Although appellant's crimes are serious, the State presented overwhelming evidence of his guilt and the few errors we have discussed are minor. Accordingly, we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Silver

_____, J.        _____, J.
Cadish                     Pickering

cc:     Chief Judge, Eighth Judicial District Court
        Department 3, Eighth Judicial District Court
        Special Public Defender
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk