141 Nev., Advance Opinion 40

IN THE SUPREME COURT OF THE STATE OF NEVADA

XAVIER ACOSTA,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 86404

FILED

AUG 21 2025

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Tierra D. Jones, Judge.

*Affirmed.*

Liberators Criminal Defense and Michael Mee, Las Vegas,
for Appellant.

Aaron D. Ford, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Taleen R. Pandukht and Ann Dunn, Chief Deputy District Attorneys, Clark County,
for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, STIGLICH, J.:

A jury convicted appellant Xavier Acosta of first-degree murder for the fatal shooting of Angel Rodriguez. In investigating the killing, police seized two cell phones belonging to Acosta and, after obtaining a search

25-36808

warrant, conducted an expansive search of their contents. We consider here whether the probable cause statement included in the warrant for Acosta's cell phones passes constitutional muster and conclude that it does not. Probable cause to justify a search requires the State to show a likelihood that an individual has committed a crime and that evidence of that crime will be located in a certain location. To justify searching the contents of an individual's cell phone, the warrant application must identify facts establishing probable cause that evidence of the particular crime being investigated will be found on that phone. A statement such as the one made here, that suspects generally use their phones in and around the time they commit offenses, does not support a search of the entire contents of a particular phone.

The warrant application and affidavit at issue attested to no particular facts establishing probable cause that evidence of the murder being investigated would be found on Acosta's phones. The district court therefore erred in denying Acosta's motion to suppress this evidence. Apart from the evidence improperly obtained from the two cell phones, however, the State presented overwhelming evidence of guilt, and we conclude that this error was harmless. We further conclude that Acosta's other claims do not warrant relief and affirm the judgment of conviction.

*FACTS AND PROCEDURAL HISTORY*

On May 30, 2021, Angel Rodriguez was shot six times in front of his house and succumbed to his injuries. Residential surveillance video footage from the area depicted a silver Cadillac SUV parked near Rodriguez's house, from which a man exited shortly after Rodriguez left his building. Eyewitnesses reported that the man ran up to Rodriguez, shot him repeatedly—even after he fell to the ground—and then fled the scene in the Cadillac SUV. Eyewitnesses described the shooter's physical build

as consistent with Acosta's. One eyewitness testified that the gun was a black semi-automatic handgun, and .40 caliber cartridge casings were recovered from the scene, although no firearm was recovered in the course of the investigation.

Acosta was identified as a suspect after officers responded to a domestic violence incident involving Acosta and his spouse Rebecca. Acosta was arrested and taken to jail. As police investigated that incident, Rebecca's mother Marline informed them that she had come home from work roughly three weeks after the shooting and found Acosta crying and shaking. Acosta told Marline that he killed Rodriguez because he loved Rebecca so much. Marline explained that Rodriguez was Rebecca's ex-boyfriend. Upon learning this, officers seized two cell phones that Marline stated belonged to Acosta and obtained a search warrant for their contents. Pursuant to the warrant, officers downloaded the contents of the seized phones and located a photograph of Rodriguez's house taken minutes before Rodriguez was shot.

Meanwhile, police found an abandoned stolen Cadillac that resembled the SUV depicted in the surveillance video. Another photo seized from Acosta's phones, dated before the killing, showed the interior of a car later identified as the interior of the abandoned Cadillac. DNA samples taken from the interior of the vehicle produced a profile consistent with Acosta's DNA, as well as profiles of the vehicle's owner and an unidentified male.

Acosta was charged with murder with the use of a deadly weapon, and the matter was set for trial. Acosta moved to exclude several communications on the grounds that they were protected by spousal privilege. The district court granted the motion in part but permitted the

State to introduce letters that Acosta had sent Rebecca from jail. Further, after a *Petrocelli*[1] hearing, the district court permitted evidence of an instance of domestic violence between Acosta and Rebecca. Acosta unsuccessfully sought to suppress the data from the cell phones, as well as data obtained from the digital carriers under a subsequent search warrant. He also unsuccessfully sought to preclude the State from referring to Rodriguez as a victim.

Marline testified as to Acosta's confessed killing of Rodriguez at trial. Rebecca's brother Thomas also testified that Acosta had confessed the same to him. In addition, Thomas stated that Acosta had access to Thomas's .40 caliber handgun, that Thomas had not seen the gun since the shooting, and that two months before Rodriguez was killed, Acosta had gotten angry about Rodriguez leaving flowers for Rebecca.

At trial, the State called several expert witnesses, including a T-Mobile representative and law enforcement officers designated as experts in DNA testing, firearms examination, crime scene analysis, and digital forensic or computer analysis. The jury ultimately found Acosta guilty of first-degree murder with the use of a deadly weapon. Acosta was sentenced to a term of life with parole eligibility after 20 years, plus a consecutive term of 5 to 15 years for the deadly weapon enhancement. Acosta appeals.[2]

---

[1]*Petrocelli v. State*, 101 Nev. 46, 692 P.2d 503 (1985).

[2]A panel of this court previously affirmed the judgment of conviction by order. *Acosta v. State*, No. 86404, 2025 WL 395637 (Nev. Feb. 3, 2025) (Order of Affirmance). Nevada Attorneys for Criminal Justice moved to reissue the order as an opinion, and Acosta petitioned for en banc reconsideration pursuant to NRAP 40A. We hereby grant en banc reconsideration and issue this opinion in place of the February 3 order. We deny as moot the motion to reissue the order as an opinion.

## DISCUSSION

*The initial seizure of the cell phones was permissible*

Acosta first argues that the data from the cell phones should have been suppressed because the phones were seized without a warrant. The State counters that the phones were consensually provided to police by Acosta's mother-in-law and thus that a warrant was not required. We need not reach the State's consent argument, as an exception to the warrant requirement applies in regard to the initial seizure of the cell phones.

"A motion to suppress presents mixed questions of law and fact." *State v. Lloyd,* 129 Nev. 739, 743, 312 P.3d 467, 469 (2013). We review findings of fact for clear error and related questions of law de novo. *Id.* "[T]he issuing judge's determination of probable cause should be given great deference," and this court's role on appeal is "to determine whether there is a substantial basis for concluding that probable cause existed." *Doyle v. State,* 116 Nev. 148, 158, 995 P.2d 465, 471-72 (2000).

"A search is per se unreasonable unless performed pursuant to a valid warrant or subject to an exception to the warrant requirement." *Smith v. State,* 140 Nev., Adv. Op. 19, 545 P.3d 716, 719 (2024). One such exception is the exigent circumstances exception, which "applies where the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id.* at 721 (internal quotation marks omitted). To prevent the imminent destruction of evidence, officers may physically seize a defendant's cell phone after the defendant was alerted to law enforcement's investigation. *Id.* at 722. That exception, however, does not extend to justifying a search of the phone's digital contents. *Id.*



We conclude that the initial physical seizure of the cell phones was covered by the exigent circumstances exception to the warrant requirement. Upon his arrest, Acosta was alerted to a potential police investigation into him. Under those circumstances, the initial warrantless seizure was justified to prevent the potential imminent destruction of evidence. As this court explained in *Smith*, however, the permissible initial seizure did not permit police to search the phones' contents, and thus the investigators appropriately sought a warrant.

*The warrant obtained to search the cell phones was overbroad, unspecific, and facially invalid*

Acosta argues that, notwithstanding the circumstances of the cell phones' seizure, the later-obtained warrant was improperly overbroad and unspecific. The State argues, to the contrary, that the warrant was appropriately tailored, as it specified the crime for which the phones were being investigated. Alternatively, the State argues that the good-faith exception to the warrant requirement salvages the search. We agree with Acosta that the warrant obtained to forensically download the contents of the cell phones was not justified.

"[N]o warrant shall issue but on probable cause, supported by Oath or Affirmation, particularly describing the place or places to be searched, and the person or persons, and thing or things to be seized." Nev. Const. art. 1, § 18; *see also* U.S. Const. amend. IV (similar). Fundamentally, a search warrant must be supported by probable cause, must describe what area will be searched, and must describe what is to be seized. *State v. Allen*, 119 Nev. 166, 170, 69 P.3d 232, 235 (2003). Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). A warrant application must show the reason the applicant believes that the

search will contain evidence linked to the crime being investigated. *Cf. United States v. Ramos*, 923 F.2d 1346, 1351 (9th Cir. 1991) ("Probable cause to justify a search warrant exists when there is a sufficient showing that incriminating items are located on the property to which entry is sought." (citations omitted)), *overruled on other grounds by United States v. Ruiz*, 257 F.3d 1030, 1032 (9th Cir. 2001). A warrant is limited by breadth and particularity requirements. *United States v. Holcomb*, 132 F.4th 1118, 1127 (9th Cir. 2025). "Breadth is the requirement that a warrant be limited by the probable cause on which the warrant is based, while particularity is the requirement that a warrant clearly state what is sought." *Id.* (internal quotation marks omitted). The particularity requirement demands that a warrant must "state with particularity the place, person, and thing to be searched or seized." *Smith*, 140 Nev., Adv. Op. 19, 545 P.3d at 720. Courts may suppress evidence seized pursuant to an insufficient warrant. *State v. Kincade*, 129 Nev. 953, 955, 317 P.3d 206, 207 (2013).

As addressed above, when Acosta was arrested in connection with the domestic violence incident, law enforcement seized two phones that were purportedly his. Law enforcement subsequently obtained and executed a search warrant for the digitally stored records and device-created data that could contain evidence of Acosta's involvement in Rodriguez's murder. The warrant included an affidavit describing probable cause that Acosta murdered Rodriguez. The only specific justification for the search of the data stored on the phones, however, was the representation "that suspects often use their cellular phones before, during and after crimes . . . [and] cellular phones store GPS location data and other information that can aid in the investigation of this crime." The affidavit requested the search of the entire contents of the listed devices "since it

SUPREME COURT
OF
NEVADA

(O) 1947A

7

[was] unknown how long the relationship between the victim and the suspect was established and/or how long [Acosta] may have been planning to shoot [Rodriguez]." *Cf. State v. Allen*, 406 P.3d 89, 93-94 (Or. Ct. App. 2017) (concluding that a warrant was impermissibly overbroad where it authorized search of the entire contents of a cell phone in a murder investigation without limiting the type of data or time frame and without showing probable cause the search was linked to the murder). The entire digital contents of both phones were extracted pursuant to this warrant.

We agree with Acosta that probable cause to search the entire contents of the phones was lacking. The proposition that "suspects often use their cellular phones before, during, and after crimes" is too attenuated a basis for conducting a broad search into the full contents of the phones. *Cf. Ramos*, 923 F.2d at 1351 ("Probable cause to believe that a suspect has committed a crime is not by itself adequate to secure a search warrant for the suspect's home."). The warrant application and affidavit offered little reason to believe the phone data would contain evidence of the murder other than, perhaps, Acosta's location at the time of the crime. The affidavit failed to identify facts that would make it more likely than not that the contents of the phones or phone data would reveal evidence of the murder. *Cf. People v. Williams*, 188 N.Y.S.3d 417, 422 (N.Y. Sup. Ct. 2023) ("[T]he warrant application must demonstrate that the defendant used the cell phone in some way that connects the phone to the crime."); *Allen*, 406 P.3d at 93-94. It further failed to include any temporal limitation to exclude older materials not plausibly related to investigating the killing. A warrant this broad is like permitting the search of every corner of an individual's home when law enforcement merely had probable cause to believe that the individual stole a couch. Further, the warrant application was

insufficiently particularized as to what type of evidence was being sought to justify a complete download of Acosta's digital life.

Courts should "exercise greater vigilance in protecting against the danger that the process of identifying seizable electronic evidence could become a vehicle for the government to gain access to a larger pool of data that it has no probable cause to collect," *United States v. Schesso*, 730 F.3d 1040, 1042 (9th Cir. 2013) (internal quotation marks omitted), and the issuing judge failed to do so here. In assessing the particularity of a warrant, courts must "consider whether it would have been reasonable for the Government to provide a more specific description of the items to be searched at that juncture of the investigation." *Holcomb*, 132 F.4th at 1129 (cleaned up). Failing to appropriately tailor the bounds of a warrant runs the risk of yielding a warrant that is both overbroad and insufficiently particular. While some crimes, such as child pornography, *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997), or cybercrime offenses, *United States v. Kvashuk*, 29 F.4th 1077, 1085 (2022), may implicate electronics for digital storage reasons or have a nexus between the offense and computers or personal storage devices, the offense here did not. *But see Weber v. State*, 121 Nev. 554, 582-84, 119 P.3d 107, 126-27 (2005) (upholding the search of a murder suspect's computer where the affiant had reason to believe the search would reveal evidence of child pornography and of false identification used to evade capture), *overruled on other grounds by Farmer v. State*, 133 Nev. 693, 698, 405 P.3d 114, 120 (2017). The warrant to search the contents of Acosta's cell phones should not have been issued absent a stronger basis to believe that the search would reveal evidence of the murder the State alleged he committed.

Further, we disagree with the State that the proceeds of the search are protected by the good-faith exception. Under the exception, evidence obtained pursuant to a subsequently invalidated warrant should not be excluded if the officer conducted the search in good faith and objectively reasonably relied on the warrant. *United States v. Leon*, 468 U.S. 897, 922 (1984). Such reliance is not objectively reasonable, and suppression is warranted, where an affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923 (internal quotation marks omitted). We conclude that suppression of the phone evidence here would serve the purpose of the exclusionary rule, as it was not objectively reasonable. The possibility of finding location data placing Acosta at the scene did not justify searching the entire contents of the phones, and the affidavit lacked any information to suggest the phones otherwise would have digitally stored evidence that directly connected Acosta to the murder. The photograph of the crime location that was ultimately recovered did not retroactively supply probable cause to believe the phones would contain relevant evidence. As the affiant failed to attest to information creating a fair probability that evidence of the murder was on the phones, reliance on the warrant was not objectively reasonable, and the good-faith exception does not apply, as belief that probable cause exists on this basis alone is unreasonable.

We therefore conclude the district court abused its discretion in denying Acosta's motion to suppress. Similarly, the evidence obtained based on the later warrants for digital information that relied on the initial overbroad searches should have been suppressed as fruit of the poisonous tree. *See Costello v. United States*, 365 U.S. 265, 280 (1961) ("[T]he 'fruit of the poisonous tree' doctrine excludes evidence obtained from or as a

consequence of lawless official acts."). We conclude, however, that the overbroad searches of the phones were harmless given that the State additionally presented overwhelming other evidence supporting Acosta's conviction, as stated below. *See Allred v. State*, 120 Nev. 410, 415, 92 P.3d 1246, 1250 (2004) ("An error is harmless when it is clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error." (internal quotation marks omitted)).

*Overwhelming evidence supports the judgment of conviction*

Acosta argues that the judgment of conviction is not supported by sufficient evidence. We disagree and further conclude that, to the contrary, the State presented overwhelming evidence of Acosta's guilt.

Evidence is sufficient to support a criminal conviction if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" when viewed in a light most favorable to the prosecution. *Belcher v. State*, 136 Nev. 261, 275, 464 P.3d 1013, 1029 (2020) (internal quotation marks omitted). It is the jury's role to determine the weight to give the evidence, and circumstantial evidence alone may sustain a conviction. *Buchanan v. State*, 119 Nev. 201, 217, 69 P.3d 694, 705 (2003). We will not invade the jury's province of determining the weight or credibility of evidence. *Mitchell v. State*, 124 Nev. 807, 816, 192 P.3d 721, 727 (2008).

The State presented evidence that a silver Cadillac SUV was parked across the street from Rodriguez's house for several minutes before the shooting, and a man then exited the vehicle, approached and fatally shot Rodriguez with a .40 caliber handgun, returned to the car, and drove away. Witnesses heard gunshots and saw an individual shoot Rodriguez multiple times, including after Rodriguez fell to the ground. Acosta's DNA matched a sample taken from inside a Cadillac that appeared to be the vehicle seen

SUPREME COURT
OF
NEVADA

(O) 1947A

11

in surveillance video. Witnesses described the shooter as having a similar build to Acosta. Acosta's mother-in-law and brother-in-law both testified that Acosta confessed to the killing. Acosta's brother-in-law testified that Acosta had access to a .40 caliber handgun. Finally, Acosta was upset with Rodriguez in connection with flowers Rodriguez left for Acosta's wife.

On these facts, a rational trier of fact could find Acosta guilty of first-degree murder with the use of a deadly weapon under a lying-in-wait theory. *See* NRS 200.010 (defining murder); NRS 200.030 (defining first-degree murder); NRS 193.165 (providing a sentencing enhancement when a deadly weapon is used); *Collman v. State*, 116 Nev. 687, 716, 7 P.3d 426, 445 (2000) (defining murder on the theory of lying in wait as "watching, waiting, and concealment from the person killed *with the intention* of inflicting bodily injury upon such person" (internal quotation marks omitted)). Additionally, firing at least six bullets sufficed for the jury to find express malice as it shows intent to kill. *Washington v. State*, 132 Nev. 655, 663, 376 P.3d 802, 808 (2016) (concluding "that firing multiple bullets into an occupied structure demonstrate[d] intent to kill"). Acosta's arguments regarding a lack of eyewitness testimony and family bias relate to the weight given to the evidence. These arguments, however, do not establish that the evidence was insufficient to support the conviction, and we decline to invade the province of the jury.

*The district court did not abuse its discretion in permitting certain expert testimony*

Acosta argues that the district court abused its discretion in permitting three expert witnesses to testify after the State failed to properly notice them. We disagree.



When a party intends to call an expert witness to testify in a criminal matter, the party must timely provide a brief statement describing the anticipated testimony, the expert's curriculum vitae (CV), and all reports the expert made. NRS 174.234(2). We review a district court's decision to allow expert testimony for an abuse of discretion. *Perez v. State*, 129 Nev. 850, 856, 313 P.3d 862, 866 (2013).

We perceive no such abuse here. The State provided Acosta with notice that two officers would testify more than a year before trial, and the State promptly provided Acosta with the officers' CVs when he challenged the CVs' absence at trial. Acosta has not shown that the untimely disclosure impacted the cross-examination of these officers or that the State acted in bad faith in untimely providing the CVs given that the officers' expected testimonies and their current positions were included in the first supplemental notice of witnesses. *Cf. Founts v. State*, 87 Nev. 165, 170, 483 P.2d 654, 656 (1971) (explaining that "the factor of surprise and its consequent prejudicial effect upon the defendant's investigation and cross-examination of witnesses" is relevant to whether improperly noticed witness testimony should be permitted). And in rejecting Acosta's motion to exclude testimony from the third expert witness, a T-Mobile employee, the district court correctly found that the State provided timely notice that a T-Mobile custodian of records would testify and provided the employee's name as soon as it had that information. Acosta has not shown that the delay impeded his cross-examining the employee or his investigating how cell towers and signals work. He also failed to show the State acted in bad faith, considering that the State did not have the employee's name until two weeks before trial because of T-Mobile's procedures for assigning trial

witnesses. Accordingly, we conclude that the district court did not abuse its discretion in allowing the testimony of these three expert witnesses.

*The district court erred in admitting letters between Acosta and his wife, but that error was harmless*

Acosta argues that letters that he sent to his wife from jail were covered by spousal privilege and therefore should not have been admitted. The State counters that the letters were not intended to be confidential because they were sent to Acosta's children as well as his wife. Alternatively, the State argues that the letters were not protected because they sought to enlist Acosta's wife in crimes and thus were exempted from the privilege under the crime-fraud exception. While we agree with Acosta, the resulting error was harmless.

Whether the spousal privilege applies turns on expectations of confidentiality. A spouse cannot be examined, without the consent of the other, "as to any communication made by one to the other during the marriage." NRS 49.295(1)(b). The communications must be confidential for the spousal privilege to apply. *Foss v. State*, 92 Nev. 163, 167, 547 P.2d 688, 691 (1976). We review a district court's decision to admit evidence for an abuse of discretion. *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008).

Here, the letters were in sealed envelopes, addressed to Acosta's wife alone, and their content suggests confidentiality. Thus, the letters were protected by the spousal privilege. We are not persuaded by the State's arguments that waiver or an exception to the privilege applies. Thus, the district court abused its discretion in admitting these privileged documents. Given the overwhelming evidence of guilt, however, the error in admitting the letters was harmless beyond a reasonable doubt.

*The district court did not err in admitting testimony on Acosta's access to a .40 caliber firearm*

Acosta argues that evidence of his access to a .40 caliber handgun should have been excluded as either improper prior-bad-act evidence or as improperly irrelevant and unfairly prejudicial. The State disagrees and maintains that the evidence was relevant and appropriately admitted. We agree with the State.

Evidence is relevant and generally admissible where it tends to make any fact material to resolving the matter more or less likely. NRS 48.015; NRS 48.025. Relevant evidence may not be admitted where the risk of unfair prejudice substantially outweighs its probative value. NRS 48.035(1). And evidence of "other crimes, wrongs or acts" may not be admitted to show a person's character to demonstrate the person acted in conformity with that character. NRS 48.045(2). NRS 48.045(2) is not implicated, however, where the conduct referenced is not a bad act. *Lamb v. State*, 127 Nev. 26, 41, 251 P.3d 700, 710 (2011).

A .40 caliber handgun was used to kill Rodriguez, making Acosta's access to such a firearm relevant because it tended to show that Acosta had the means to murder Rodriguez. *See United States v. Dorsey*, 677 F.3d 944, 952 (9th Cir. 2012) (concluding that access to a gun similar to the one used to perpetrate a crime "was relevant because it tended to prove that [the defendant] had the means to commit the charged crimes" and was the shooter). As Acosta acknowledges, possession of a handgun is constitutionally protected, U.S. Const. amend. II, and the handgun evidence therefore was not susceptible to challenge as improper prior-bad-act evidence. Further, Acosta has not shown that the evidence would "appeal to the emotional and sympathetic tendencies of a jury, rather than the jury's intellectual ability to evaluate evidence," and therefore he has not shown a

SUPREME COURT
OF
NEVADA

(O) 1947A

15

risk of unfair prejudice. *State v. Eighth Jud. Dist. Ct. (Armstrong)*, 127 Nev. 927, 933, 267 P.3d 777, 781 (2011) (internal quotation marks omitted). Thus, the district court did not abuse its discretion in admitting evidence that Acosta had access to the same type of gun as the one used in the murder.

*The district court did not err in admitting evidence of domestic violence*

Acosta challenges evidence of a previous domestic violence incident as improper character evidence, not probative, unfairly prejudicial, and cumulative of other evidence. We disagree.

Evidence of a prior bad act may be admitted to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident" but may not be used to show propensity. NRS 48.045(2). To admit such evidence, a court must find "(1) the prior bad act is relevant to the crime charged and for a purpose other than proving the defendant's propensity, (2) the act is proven by clear and convincing evidence, and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice." *Bigpond v. State*, 128 Nev. 108, 117, 270 P.3d 1244, 1250 (2012).

After a hearing outside the presence of the jury, the district court admitted evidence of a domestic violence incident two months before the shooting where Acosta battered his wife after learning that Rodriguez had left flowers for her. We conclude that this evidence was relevant and admissible to show motive and intent in connection with Acosta's anger toward Rodriguez. And we conclude that Acosta has not shown that the risk of unfair prejudicial effect outweighed the probative value of this incident or that the evidence was cumulative given that the evidence was critical to explaining the relationship between Acosta and Rodriguez and was highly probative of Acosta's motive and intent.

 

*The district court did not abuse its discretion in admitting a cell phone location map*

Acosta argues that the trial exhibit depicting his cell phone data on a map prepared by a detective and the detective's testimony addressing the map impermissibly and inaccurately conveyed directionality and should have been excluded as unreliable, as the T-Mobile custodian of records testified that the data did not indicate directionality. We disagree.

We conclude that the detective's testimony was not inconsistent with the custodian's. The custodian testified about the raw data from the cell phones—longitude and latitude coordinates—which represented the location of the cell tower. The custodian explained that an azimuth can indicate whether a cell phone is north, east, south, or west of the tower to which it connected. The detective, in turn, testified that an azimuth provides a directionality metric, indicating the direction of a phone relative to the tower. This was consistent with the custodian's testimony.[3] Accordingly, the district court did not abuse its discretion in allowing the detective's testimony and admitting the map.

*References to Rodriguez as "victim" and the killing as a "murder" were not improper*

Acosta argues that the State's references to Rodriguez as a "victim" during the evidentiary phase and to the killing as a "murder" prejudiced the jury against him and impermissibly carried with it an indicia

---

[3]Insofar as Acosta argues that the map was confusing or prejudicial, he did not include the map in the appendices on appeal and thus fails to show an entitlement to relief. *See Riggins v. State,* 107 Nev. 178, 182, 808 P.2d 535, 538 (1991) (presuming that missing portions of the record "support the district court's decision"), *rev'd on other grounds,* 504 U.S. 127 (1992); *Greene v. State,* 96 Nev. 555, 558, 612 P.2d 686, 688 (1980) ("The burden to make a proper appellate record rests on appellant.").

of guilt contrary to the presumption of innocence.[4]   Relatedly, Acosta challenges the district court's references to the killing as a "murder case" during voir dire.   These statements do not constitute reversible error.

The common understanding of the meaning of "victim" is "[o]ne who is harmed or killed by another, especially by someone committing a criminal or unlawful act." *Victim, The American Heritage Dictionary of the English Language* (5th ed. 2022). A "murder" refers to "[t]he killing of another person without justification or excuse, especially the crime of killing a person with malice aforethought or with recklessness manifesting extreme indifference to the value of human life." *Murder, The American Heritage Dictionary of the English Language* (5th ed. 2022).

While there may be instances where referring to a shooting victim during the evidentiary phase of a trial as a "victim" of a "murder" constitutes error, this is not one, as it was uncontested that Rodriguez was shot and killed in a murder.   Acosta did not argue that the killing of Rodriguez was not a crime, but rather, he argued that he did not commit the crime.   A person who died from six gunshot wounds, including two to his face and two from behind, fits within the commonsense understanding of what a "victim" of a "murder" is.   The district court's reference to a "murder case" informed the jury of the nature of the allegations but did not prejudge the case against Acosta or impair the presumption of innocence. Acosta has not shown that the trial would have proceeded differently had the State referred to Rodriguez throughout trial as the "deceased" who was

---

[4]Acosta presents the argument on the use of "murder" in arguing prosecutorial misconduct. We conclude that it is more reasonably addressed alongside the argument on the use of "victim." As we determine the use was not error, we similarly conclude that it was not prosecutorial misconduct.

killed in a "homicide." The jury was properly instructed on the presumption of innocence and the elements of first-degree murder, and Acosta has shown no likelihood that the colloquial use of "victim" or "murder" in questioning witnesses contributed to the verdict here.

*Prosecutorial misconduct does not warrant relief*

Acosta argues that several statements the State made during the evidentiary phase and in closing argument constituted prosecutorial misconduct. While some of these statements were improper, they do not warrant reversal.

This court employs a two-step process when considering prosecutorial misconduct. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). The court first determines whether the conduct is improper, and then, if so, whether reversal is warranted. *Id.* The court considers challenged comments in context, and "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone." *Hernandez v. State*, 118 Nev. 513, 525, 50 P.3d 1100, 1108 (2002) (quoting *United States v. Young*, 470 U.S. 1, 11 (1985)). Acosta failed to object to these comments below, and thus we review for plain error, under which Acosta must show "the error affected his . . . substantial rights, by causing actual prejudice or a miscarriage of justice." *Valdez*, 124 Nev. at 1190, 196 P.3d at 477 (internal quotation marks omitted).

Acosta first challenges the State's closing argument that the guilt phase was not the time for the jury to make decisions based on sympathy. He contends that the defense did not take this position and that this argument denigrated the defense. These comments permissibly reflected the jury's duty to render a verdict based on the evidence, rather than any sympathy they might feel toward Acosta. *See Lisle v. State*, 113 Nev. 540, 554, 937 P.2d 473, 482 (1997) (concluding that the prosecutor may

Supreme Court
of
Nevada

(O) 1947A

19

argue that the jury must be accountable and do the right thing). Accordingly, we reject that this argument denigrated the defense.

Second, Acosta contends that the State's asserting in closing argument that there was "no question" and "no doubt" with respect to whether a murder occurred and whether Acosta was guilty was improper. We agree that these statements improperly injected the State's personal opinion on Acosta's guilt. *See Pantano v. State*, 122 Nev. 782, 793, 138 P.3d 477, 484 (2006) (concluding that stating "there's no doubt he's guilty" improperly expressed the prosecutor's personal opinion). Similarly, the State's closing statement that the jury would get to the penalty phase the next day impermissibly injected the prosecutor's opinion on Acosta's guilt because it assumed that the jury would find Acosta guilty and proceed to the penalty phase.

Third, Acosta challenges the State's statement in closing that the jury was "sitting in [a] room with a cold-blooded killer." Referring to Acosta as a cold-blooded killer not only assumes Acosta is guilty but also plays on the fears of the jury. *See Moser v. State*, 91 Nev. 809, 813 & n.4, 544 P.2d 424, 427 & n.4 (1975) (concluding that a closing argument that the defendant committed murder in cold blood was designed to improperly inflame the jury's emotions). This statement in the closing argument was therefore wholly improper.

While Acosta has identified several improper comments made during closing argument, Acosta fails to demonstrate that these comments affected his substantial rights by causing actual prejudice or a miscarriage of justice. The State presented overwhelming evidence of guilt, and thus the prosector's improper closing arguments do not warrant relief. *See Yates v. State*, 103 Nev. 200, 206, 734 P.2d 1252, 1256 (1987) ("When a guilty

SUPREME COURT
OF
NEVADA

(O) 1947A

verdict is free from doubt, even aggravated prosecutorial remarks will not justify reversal."). We therefore conclude that Acosta's claims of prosecutorial misconduct do not require reversal.

*The district court did not err in declining to instruct the jury on voluntary manslaughter*

Acosta argues that the court should have given a jury instruction on voluntary manslaughter based on evidence that Rodriguez was having an affair with Rebecca. We disagree.

We review a district court's decision to instruct the jury "for an abuse of discretion or judicial error." *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005). A defendant is entitled to an instruction on the defense's theory of the case if evidence supports it. *Williams v. State*, 99 Nev. 530, 531, 665 P.2d 260, 262 (1983). Voluntary manslaughter is a killing where there is "a serious and highly provoking injury inflicted upon the person killing, sufficient to excite an irresistible passion in a reasonable person." NRS 200.050(1). If an interval of time has passed between a provocation and the killing purportedly provoked, "the killing shall be attributed to deliberate revenge and punished as murder." NRS 200.060.

Acosta did not argue manslaughter in closing, and the record belies any contention that "an immediate emotional provocation" led to Rodriguez's killing. While evidence shows Acosta learned of a possible romantic connection between Rodriguez and Rebecca, Acosta learned of this connection two months before the killing; this repels the proposition that the killing was the result of "an irresistible passion." Moreover, the evidence shows that Acosta drove to Rodriguez's home and waited before killing Rodriguez. The district court therefore did not abuse its discretion in declining to instruct the jury on voluntary manslaughter.

 

*Cumulative error did not deprive Acosta of a fair trial*

Lastly, Acosta argues cumulative error. To determine whether cumulative error merits relief, we look to "(1) whether the issue of guilt is close, (2) the quantity and character of the error, and (3) the gravity of the crime charged." *Mulder v. State*, 116 Nev. 1, 17, 992 P.2d 845, 854-55 (2000).

First, Acosta's guilt was not a close issue. As we have noted, the State presented overwhelming evidence of guilt. Second, we find four errors occurred: (1) improper admission of the contents downloaded from Acosta's phone, (2) improper admission of the letters between Acosta and his wife, (3) improper admission of the location data and photographs from Acosta's phone, and (4) unpreserved instances of prosecutorial misconduct during closing argument. Third, first-degree murder with the use of a deadly weapon is a grave crime. Taken together, we conclude that the errors did not deny Acosta a fair trial. Even excluding the improperly admitted evidence, the State still presented overwhelming evidence to support the conviction, and the improper comments by the prosecutor were not so grave as to contaminate the proceedings and undermine our confidence in the jury's verdict.

## CONCLUSION

Probable cause to justify searching the contents of a cell phone must specifically articulate the evidence of the offense being investigated that is anticipated to be found on the phone. Not only is it constitutionally intolerable to countenance searching the contents of a phone with less justification than a showing of probable cause, but given how far the data

SUPREME COURT
OF
NEVADA

(O) 1947A

22

stored on a cell phone reaches into every facet of modern life, the harms caused by such an unconstitutional search grow more serious daily. Permitting the search of the entire contents of a phone runs a serious risk of inviting an overbroad and insufficiently particular search. Apart from the unconstitutionally seized evidence here, however, the State presented overwhelming evidence of guilt, and Acosta has not otherwise shown that relief is warranted. We thus affirm the judgment of conviction.

_____, J.
Stiglich

We concur:

_____, C.J.
Herndon

_____, J.
Pickering

_____ J.
Parraguirre

_____, J.
Bell

_____, J.
Cadish

_____, J.
Lee